**RECEIVED**
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 1/16/13

# IN THE UNITED STATES DISTRICT COURT OF
## THE WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | | |
|---|---|---|
| CADEVILLE GAS STORAGE LLC | § | CIVIL ACTION NO.: 3:12-cv-02927 |
| | § | |
| | § | |
| VS. | § | JUDGE ROBERT G. JAMES |
| | § | |
| 0.86 ACRES OF LAND IN | § | |
| OUACHITA PARISH, LOUISIANA | § | |
| AND BENJAMIN DALE RHODES, SR. | § | MAGISTRATE JUDGE KAREN L. HAYES |

## ORDER CONFIRMING CADEVILLE GAS STORAGE LLC'S RIGHT TO CONDEMN PROPERTY RIGHTS AND GRANTING A PRELIMINARY AND PERMANENT INJUNCTION AUTHORIZING IMMEDIATE ENTRY

The captioned matter came for hearing on ~~December~~ January 15, 2013, ~~2012~~, on the motion of Plaintiff Cadeville Gas Storage LLC ("Cadeville"), for Confirmation of Condemnation of Property Rights and for Granting a Preliminary and Permanent Injunction Authorizing Immediate Entry (the "Motion"). The Court, having considered the Motion, the supporting memorandum, and the arguments and evidence presented at the hearing, finds that the Motion [Doc. No. 6] should be granted.

### JURISDICTION AND VENUE

1.      Cadeville is a natural gas company as defined by the Natural Gas Act (the "Act"). 15 U.S.C. § 717(a)(6). Cadeville has been issued a Certificate of Public Convenience and Necessity (the "Certificate") by the Federal Energy Regulatory Commission ("FERC") to construct, operate, and maintain an interstate natural gas storage facility and associated facilities (the "Project"). The Project involves the conversion of a depleted natural gas reservoir to storage service. The reservoir is the "James Zone, Reservoir A," in the Cadeville Field, Ouachita Parish, Louisiana, as defined in Office of Conservation Order No. 356-E-16 (the "Storage Reservoir").

2.      This action is governed by the section 717f(h) of the Natural Gas Act, which provides, in pertinent part:

{HD042276.1}

> When any holder of a certificate of public convenience and
> necessity cannot acquire by contract, or is unable to agree with the
> owner of property to the compensation to be paid for, the necessary
> right-of-way to construct, operate, and maintain a pipe line or pipe
> lines for the transportation of natural gas, and the necessary land or
> other property, in addition to right-of-way . . . it may acquire the
> same by the exercise of the right of eminent domain in the district
> court of the United States for the district in which such property
> may be located, or in the State Courts.

15 U.S.C. § 717f(h).

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and under 28 U.S.C. § 1337, because this action arises under an Act of Congress regulating interstate commerce.  Jurisdiction is also proper in this Court pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## CONFIRMATION OF THE PLAINTIFF'S RIGHT TO CONDEMN

4.     Upon FERC's issuance of the Certificate and Cadeville's acceptance of same, Cadeville filed the Original Complaint for Condemnation under the Natural Gas Act and pursuant to Rule 71.1 of the Federal Rules of Civil Procedure, seeking to condemn permanent and exclusive subsurface storage rights, as well as all actions and services necessary in order to facilitate such rights (the "Storage Rights").  In addition, Cadeville sought to condemn all minerals (and the rights thereto) that may be contained in the Storage Reservoir.  Cadeville filed the Motion, in part, requesting the Court enter an order confirming that Cadeville has the substantive right to condemn Defendant's property rights, as set forth in the complaint, under the Natural Gas Act.

5.     The Court finds that Defendant was duly and properly served via the applicable service rules.

6.     The Court finds that Cadeville is the holder of a valid Certificate of Public Convenience and Necessity issued by FERC, that FERC has determined that the Defendant's property is necessary for the Project, and that Cadeville has been unable to acquire the Defendant's property by agreement.  Thus, the Court determines that Cadeville has satisfied all requirements of the Natural Gas Act.  15 U.S.C. § 717f(h).  The Court further finds that the interests condemned by Cadeville are consistent with the authority granted it by the Certificate and within the scope of such authority, and Cadeville is authorized by the Natural Gas Act to exercise the power of eminent domain.  Therefore, the Court hereby confirms Cadeville's right to condemnation of the Storage Rights, mineral rights, and ancillary rights, as described in the Complaint, as to Defendant's property, which is identified in Exhibit 1 hereto.

## PRELIMINARY AND PERMANENT INJUNCTION GRANTING ACCESS

7.     Cadeville also requests the Court grant it a preliminary and permanent injunction authorizing it to enter Defendant's property so that it may immediately begin preparations for the conversion of the depleted natural gas reservoir to storage in order to be in service no later than August 31, 2013.  For injunctive relief to be proper, the Court must determine that four factors exist.  There must be a substantial likelihood that the Plaintiff will prevail on the merits; there must be a substantial threat that irreparable harm will result if the injunction is not granted; the harm that would result to the Plaintiff if the injunction is denied must outweigh the harm to the Defendant if the injunction is granted; and granting the injunction will not disserve the public interest.  *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

8.     Federal courts across the country have recognized that a district court has the equitable authority to grant immediate entry and possession to a natural gas company in a condemnation action brought under the Natural Gas Act.  *See, e.g.*, *East Tennessee Natural Gas Co., v. Sage*, 361 F.3d 808, 826-828 (4th Cir. 2004) (granting immediate possession of

easements where delays in construction would generate significant unrecoverable costs and time delays in completing project); *Gulf Crossing Pipeline*, 2009 WL 2465892, at *4 ("the equitable remedy of immediate possession is available if the condemnor can satisfy the criteria for preliminary injunctive relief"); *Southeast Supply Header*, 2008 WL 160700, at *2 (same); *Maritimes & Northeast Pipeline, LLC v. Decoulos*, 146 Fed. Appx. 495, *2-3 (1st Cir., 2005); *Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right-of-way*, 197 F.Supp.2d 1241, 1245 (E.D.Wash. 2002) ("[w]here there is no dispute about the validity of [the gas company's] actual right to the easement, denying authority to grant immediate possession would produce an absurd result"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill. 2002) (immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); *Northern Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D.Ill. 2000) (same).

9.    The Court finds that Cadeville has satisfied the four requirements established for the granting of injunctive relief. The Court finds that Cadeville has been issued a valid Certificate of Public Convenience and Necessity by FERC, and that all requirements under the Natural Gas Act for Cadeville to exercise the right of eminent domain have been satisfied. Thus, there is a substantial likelihood that Cadeville will prevail on the merits and be granted the right to condemn the Storage Rights and mineral rights at issue herein.

10.    The Court further finds that Cadeville has met its burden of demonstrating a substantial likelihood that immediate and irreparable harm will result if the injunction is not granted, and if it is not able to obtain immediate entry to Defendant's property to begin conversion of the depleted to storage and injection of base gas. As demonstrated by the evidence and testimony presented, Cadeville, its anchor customer, and the public at large will be irreparably harmed if the Project is not in-service by August 31, 2013. It is critical that Cadeville

have access to Defendant's property so that it may begin injecting base gas into the Storage Reservoir. The injection of base gas will then allow Cadeville to test its wells, its equipment, and the reservoir itself. If problems arise with any facet of the Project, various responsive actions must then be taken to rectify such issues. The amount of time required to correct any problem will vary depending on the magnitude, but weeks and/or months may be necessary. Thus, in order for Cadeville to meet its in-service date, it must have access to the property no later than February 1, 2013.

11.     Any delay in granting Cadeville possession of the property will impede its ability to provide the needed energy delivery services deemed by FERC to be in the best interest of the public. Finally, the costs to Cadeville, its customer, and the public will be significantly increased if immediate possession is not granted. These increased costs are against public policy, and would be unrecoverable.

12.     On balance, the potential harm of the injunction to Cadeville and the public at large outweighs any harm to the Defendant. Defendant landowner will not be harmed if Cadeville is granted immediate access to the property to immediately begin preparation of the Storage Reservoir, rather than waiting until completion of a valuation hearing to obtain possession, as granting immediate possession will not cause the landowner to lose or compromise any right it has under federal law. Moreover, the Court shall require Cadeville to provide a bond in an amount reflective of the estimated amount of compensation so as to secure Defendant's property interests. The only issue remaining for this Court to decide is the amount of compensation to be paid, which is not affected by Cadeville beginning its activities. Thus, any alleged harm to the Defendant is minimal and is outweighed by the potential harms to Cadeville and others impacted by the delay in construction.

13.     In contrast, Cadeville, its customer, and the public would be harmed by any delay

of entry. The landowner will receive just compensation for the property interests acquired by Cadeville, and this compensation will be the same regardless of whether immediate entry is granted. Further, any alleged inconvenience or other disruption to the landowner will occur no matter when Cadeville is granted possession. Accordingly, the substantial threat of irreparable harm to Cadeville, its customers, and the public greatly outweighs any negligible risk of harm to the landowner.

14. It is within FERC's authority to determine whether a proposed Project furthers the public interest. FERC's issuance of the Certificate is evidence that it has so determined, and that determination may not be collaterally attacked here. In addition, the Court finds that the grant of injunctive relief to permit Cadeville to begin preparation of the Storage Reservoir for service prior to the determination of just compensation furthers the public interest in that it will aid in ensuring that the FERC-approved Project will not be delayed.

15. The Court determines that Cadeville shall provide a bond to the Clerk of Court prior to accessing Defendant's property.

16. Accordingly, for the foregoing reasons, the Court finds that Cadeville's request for a preliminary and permanent injunction should be granted.

**IT IS THEREFORE ORDERED**

A. That pursuant to the Natural Gas Act, as the holder of a valid Certificate of Public Convenience and Necessity issued by FERC on August 10, 2010, Cadeville has the substantive right to condemn property rights needed for the Project;

B. That Cadeville shall be awarded permanent and exclusive subsurface storage rights under Defendant's property described in Exhibit 1 attached hereto, as well as all actions and services necessary in order to facilitate such rights (the "Storage Rights"). The Storage Rights will be used for purposes of injecting, storing, withdrawing, producing, or removing

natural gas, in gaseous or liquid form, together with any water, water vapors or other vapors, absorbed therein, or any other liquid or gaseous hydrocarbons, which may remain in the Storage Reservoir (as defined in this Order). The Storage Rights would further provide Cadeville with the right to do and perform all such other acts and things as may be necessary or convenient as determined by Cadeville for the purposes outlined herein, including, without limitation, the right to conduct geological and geophysical surveys and all activities pertaining thereto, including, without limitation, seismic activities, on, over, and beneath Defendant's property and the exclusive ownership of all data collected at any time from such activities;

        C.      That Cadeville shall be awarded all minerals and other natural resources of every nature and type, whether in solid, liquid, gas or other form (and the rights thereto), including, without limitation, oil, gas, and all other hydrocarbon minerals and all non-hydrocarbon minerals such as salt, brine, and sulphur in and under Defendant's property which are or may be contained in the Storage Reservoir;

        D.      That Cadeville is granted the right to withdraw from the Storage Reservoir any minerals contained therein, salt water, fresh water, natural gas, hydrocarbons, in gaseous or liquid form, or any other substances withdrawn or stored by Cadeville in the Storage Reservoir without being obligated to pay any royalty or any other payments to Defendant, other than assessed by the Court herein as compensation for the Storage Rights, the condemned mineral rights, and any ancillary rights;

        E.      That Cadeville is granted the full right and authority to lease, sell, assign, transfer, and/or convey to others the Storage Rights, mineral rights, all other rights granted herein, in whole or part, or to encumber the same; and

        J.      Prior to entering Defendant's property pursuant to this order, Cadeville shall submit a ~~surety~~ *Cash* bond in the amount of $ 3,005.00 to the Clerk of Court.

SO ORDERED this the 15 day of January, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

LEGAL DESCRIPTION OF PROPERTY

THAT CERTAIN TRACT OF LAND LYING IN SECTION 32, TOWNSHIP 17 NORTH, RANGE 2 EAST, OUACHITA PARISH, LOUISIANA, CONTAINING 0.86 ACRES, MORE OR LESS, AND BEING KNOWN AS ROUSH LANE. SAID PROPERTY BEING MORE FULLY DESCRIBED IN THAT CERTAIN DOCUMENT RECORDED IN CONVEYANCE BOOK 162, PAGE 740 OF THE RECORDS OF OUACHITA PARISH, LOUISIANA.